IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PURAVAI, LLC, a Utah limited liability company; SAGAN LIFE LLC dba SAGAN INDUSTRIES, a Utah limited liability company; COLDSTREAM OUTDOOR L.P., a California limited partnership; RBM TAHOE LLC, a California limited liability company; and BE READY, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CAN dba BLUE CAN WATER, a Nevada corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:18-cv-00255-DB-EJF<br><br>District Judge Dee Benson |

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, filed on July 23, 2018. (Dkt. No. 26.) On August 20, 2018, Plaintiffs filed a timely memorandum in opposition to Defendant's motion. (Dkt. No. 29.) On September 18, 2018, Defendant submitted a reply to Plaintiffs' opposition. (Dkt. No. 34.) Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

## BACKGROUND

In reviewing a case's factual background, the Court is mindful that "the allegations in the [plaintiff's] complaint must be taken as true to the extent they are uncontroverted by the defendants' affidavits." *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir.

1984).  If there is conflicting evidence, the Court is to "resolve all factual disputes in favor of the plaintiff in determining whether plaintiff has made a prima facie showing that establishes jurisdiction."  *Far West Capital v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995).  With these standards in mind, the Court considers the facts and allegations of this case.

Defendant Blue Can Water ("Blue Can") is a Nevada corporation with its principal place of business in Los Angeles County, California.  (Dkt. No. 26 at 3.)  It conducts business primarily in California, is not registered to conduct business in Utah, and has no corporate operations in Utah.  It has no offices, property, employees, or records in Utah, and has no Utah agent for service of process.  (*Id.* at 14.)  Plaintiffs Puravai, LLC ("Puravai") and Sagan Life LLC dba Sagan Industries ("Sagan") are based in Utah, while Plaintiffs Be Ready, Inc. ("Be Ready"), Coldstream Outdoor L.P. ("Coldstream"), and RBM Tahoe LLC ("RBM") are based in California.  (*Id.* at 4-5). Puravai manufactures and sells prepackaged storage water designed for use in emergency and disaster relief circumstances. (Dkt. No. 9, FAC ¶11.)  Blue Can also manufactures and sells prepackaged emergency storage water, and maintains that its high-tech filtration process allows the water to be safely consumed for up to 50 years.  (*Id.* ¶19.)

In May 2015, Plaintiff Be Ready entered into an agreement with Blue Can to be the master distributor of Blue Can's products.  (*Id.* ¶20.)  In or around August 2016, Dennis Clements, a principal of Plaintiff Sagan, noticed that several cans of Blue Can that had been purchased from Be Ready in April 2016 appeared defective.  (Dkt. No. 29 at 5.)  Plaintiffs allege that Sagan's CEO Rick Muir then sent a case of those cans to BCS Labs in Florida to be tested for bacteria content, and that on August 22, 2016 BCS determined that each of the samples had a significant quantity of heterotrophic bacteria (the "8-2016 Test Results"). (FAC ¶26.)

In October 2016, Blue Can terminated its distributor agreement with Be Ready after learning from another distributor that Be Ready was working with another party to develop a competing emergency water company. (*Id.* ¶21; Dkt. No. 26 at 6.) In January 2017, Plaintiffs then formed a competing emergency water company, Puravai, LLC. (FAC ¶27).

In mid-2017, Puravai initiated a marketing campaign emphasizing the bacteria-free nature of its water product and, according to Defendant, specifically disparaged Blue Can on social media pages and sent misleading emails to Blue Can's customers in California in an effort to draw business away from Blue Can. (*Id.* ¶28; Dkt. No. 26 at 7.) As part of Puravai's campaign, an informational video (the "Informational Video") was placed on its website that included a picture that Mr. Muir received from BCS of a petri dish labeled "Blue Can B" with bacteria on it. (FAC ¶29.) Puravai also posted this same video on YouTube and embedded the video as a link on a reseller's website. (Dkt. No. 26 at 7.) Blue Can alleges that this is misleading to consumers because "only certain types of bacteria are the least bit harmful to consumers" and because the BCS test did not meet scientific protocol such as a chain of custody. (*Id.* at 7.)

On or around May 18, 2017, Blue Can sent a cease and desist letter to Puravai accusing Puravai of defamation and demanding that Puravai remove the video from its website and all other online locations where it was embedded. (FAC ¶30.) Puravai agreed to edit and remove the "Blue Can B" label from the video from Puravai's website (*Id.* ¶31), but denied publishing false or disparaging statements. (Dkt. No. 29 at 8.) Defendant alleges that the original video with Blue Can's name depicted on the petri dish is still viewable on YouTube and many other websites, including Plaintiff Coldstream's website. (Dkt. No. 26 at 8.) In June 2017, Puravai

through its manager Marcello Surjopolos sent emails to several of Plaintiff's potential and current customers and resellers to persuade them to stop carrying Blue Can. (*Id.* at 9.)

Two of Puravai's potential customers (one from Utah and one from California) sent their own samples of Blue Can water to BCS for bacteria testing. (FAC ¶33.) The results for both tests allegedly showed varying levels of heterotrophic bacteria in the samples. (*Id.* ¶33.) Soon thereafter, Puravai entered into an agreement with J.J. Johnson dba Reality Survival in Wyoming to produce another video (the "Johnson Video") comparing Blue Can Water to Puravai Water, and referencing the 8-2016 Test Results. (*Id.* ¶37.) This video still appears on Puravai's website. (*Id.*)

On February 10, 2018, Blue Can sent a second cease and desist letter to Plaintiffs, and accused Plaintiffs of defamation by continuing to reference the August 2016 test results in the Informational Video and by posting the Johnson Video. (Dkt. No. 29 at 9.) Blue Can also accused Plaintiffs of conspiring together to defame Blue Can in an effort to unfairly compete, as well as of interference with contractual relations and prospective economic advantage. (*Id.* at 10.) As with the May 2017 Letter, Blue Can specifically noted in the February 2018 Letter that it would be filing its claims against Plaintiffs in California. (Dkt. No. 26 at 3.) After receiving this letter, Sagan purchased one case of Blue Can on Amazon.com and shipped it to Ultimate Labs in California for testing. (Dkt. No. 29 at 10-11.) This report also showed high levels of heterotrophic bacteria. (*Id.*) Puravai asserts that evidence pertaining to each of these test results are stored at its Utah headquarters. (*Id.* at 11.)

On March 22, 2018, Plaintiffs filed this suit for a declaratory judgment that Plaintiffs have not engaged in unfair competition, and affirmatively claiming that Blue Can falsely advertised its products in violation of the Lanham Act and the Utah Truth in Advertising Act.

(*Id.*)  In the motion now before the Court, Defendant moves for dismissal for lack of personal jurisdiction, arguing that Blue Can is not at home in Utah, and that there is no meaningful connection between Blue Can's alleged Utah-related activities and the purported false advertising claim.

Plaintiffs' opposition to the motion alleges that Blue Can's contacts and activities in Utah collectively make the Court's exercise of personal jurisdiction over Defendant proper.  (*Id.* at 2.) In particular, Plaintiffs allege that Blue Can both maintains and holds itself out to the public on its website as maintaining three authorized dealers located in Utah through which Blue Can sells its products in Utah.  (*Id.* at 2, 15.)  They also assert that Blue Can holds contracts with both the Utah-based Intermountain Healthcare (IHC) and the University of Utah, has advertised its products and solicited sales at emergency preparedness fairs in Utah (*id.*), and that Blue Can water has been advertised at least once in the *Deseret News*, a Utah publication.  (*Id.* at 4.) Plaintiffs argue that Blue Can's misleading claims and false advertising cause Puravai to lose sales and customers, thus harming it as a competitor.  (*Id.* at 17.)

In its reply to Plaintiffs' opposition, Defendant provides evidence that two of the Utah locations (Honeywell #1 and #2) that resell Blue Can water 1) obtained their products directly from its prior distributor, Be Ready, 2) had no contact with Blue Can, and 3) were only put on Blue Can's website per Be Ready's request.  (Dkt. No. 34 at 1-2; Suppl. Skylar Decl., ¶2.)  Blue Can's third Utah reseller (Kimball Ready) has an online presence only, with no brick and mortar store in Utah, and has not purchased any Blue Can product in over 18 months.  (Dkt. No. 34 at 2; Suppl. Skylar Decl., ¶3.)  Blue Can also asserts that it never instructed or directed Plaintiff Be Ready to go to or perform any specific act in Utah.  (Dkt. No. 34 at 7.)  It also never attended an emergency preparedness fair in Utah; rather, it was Be Ready, by and through its principal Alden

5

Cabacungan, who attended these fairs at his own behest to showcase numerous other products in addition to Blue Can products. (*Id.* at 1, 7.) Further, it was Be Ready that placed an advertisement for Blue Can products in the *Deseret News*, without instruction or direction from Blue Can. (*Id.* at 7.) While Blue Can does not dispute that it held contracts with IHC and the University of Utah, it claims that neither of these has purchased any Blue Can product since February 2017. (*Id.* at 11.) Blue Can's income from Utah sales was less than 5% prior to 2015, reached 9% at its highest point in 2016, and has dropped off to nearly 0% since this dispute arose. (*Id.* at 4, 9.)

## **DISCUSSION**

When a defendant challenges a court's jurisdiction under Federal Rule of Civil Procedure 12(b)(2) on the basis of the complaint and affidavits, plaintiffs bear the burden of establishing that jurisdiction over the defendant is proper. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996). Plaintiffs must "only make a prima facie showing of personal jurisdiction" by demonstrating through affidavit or other written materials, facts that if true would support jurisdiction over the defendant. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)). Utah's long arm statute applies "to the fullest extent permitted by the due process clause of the Fourteenth Amendment." Utah

Code Ann. § 73B-3-201(3). Therefore, it is prudent to "undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute." *Sys. Designs, Inc. v. New Customward Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King*, 471 U.S. at 471-72 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Thus, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

There are two ways to satisfy this minimum contacts requirement for personal jurisdiction. First, a court may assert specific jurisdiction over a nonresident defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or are related to those activities." *Burger King*, 471 U.S. at 472. Second, if no such nexus exists between a defendant's forum-related activities and the injury sustained, the Court may nevertheless exercise general jurisdiction over the defendant when the defendant's contacts are "so pervasive that personal jurisdiction is conferred by the 'continuous and systematic' nature of the defendant's in-state activities." *OMI Holdings*, 149 F.3d at 1090-91. If the defendant's activities do create sufficient minimum contacts, we must also consider "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Id.*

## I. General Jurisdiction

A court may assert general jurisdiction over a defendant if the defendant's activities in the state are "so continuous and systematic as to render [it] essentially at home in the forum

7

state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). Courts have long held that a different analysis applies for general jurisdiction than specific jurisdiction: "[f]or general jurisdiction, the defendant's contacts with the state must be greater than those required for specific jurisdiction." *Doe v. National Medical Servs.*, 974 F.2d 143, 146 (10th Cir.1992); *Kuenzle* 102 F.3d at 458. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place . . . [where] the corporation is fairly regarded at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Exercising general jurisdiction is not limited, however, to these paradigm forums; in an "exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (internal quotation marks omitted).

Plaintiffs have not alleged sufficient facts to establish general jurisdiction over the nonresident defendant Blue Can. Most significantly, Blue Can was incorporated in Nevada, and its only office and principal place of business is in California. It conducts business primarily in California, and has no corporate operations in Utah. In fact, it has no offices, property, employees, or records in Utah, and has no Utah agent for service of process. Additionally, Blue Can's income from Utah sales was less than 5% prior to 2015, remained below 10% since then, and has since dropped off to nearly 0% after this dispute arose. Plaintiffs have not contested these facts. Instead, Plaintiffs contend that Blue Can should be subject to general jurisdiction because it allegedly conducts business continuously and systematically within Utah.

In support of this contention, Plaintiffs argue that Blue Can's website identifies and holds itself out as maintaining three separate Utah locations where its products are sold by authorized dealers. They also assert that the University of Utah and Intermountain Healthcare are Blue

Can's "primary customers," further demonstrating a continuous relationship with Utah residents. (Dkt. No. 29 at 14.) In support of their allegation that Blue Can's activities have yielded "continuous sales revenue for Blue Can from Utah citizens," Plaintiffs argue that Blue Can has attended emergency preparedness fairs in Utah to solicit, advertise, display, and sell its products, and that its product was also advertised in the *Deseret News*. (*Id.* at 15.) Yet many of these allegations appear to be conclusory or unsupported, while some of Blue Can's purported direct contacts with the state of Utah have been controverted or seriously cast into doubt by Blue Can's affidavit and other evidence.

Even supposing that all of Plaintiffs' alleged contacts and transactions were taken as true, however, they still would not rise to the level of being "so substantial . . . as to render [this] corporation at home" in the state of Utah. *See, e.g.*, *Daimler AG*, 134 S.Ct. at 761-62 (holding that even the largest supplier of luxury vehicles to the California market with multiple California-based facilities was not subject to general jurisdiction simply because their sales were sizable there). The inquiry is not simply whether Blue Can's sales and other business dealings in Utah rise to the level of "continuous and systematic;" it is whether its "affiliations are *so* continuous and systematic as to render it essentially at home in the forum State." *Id.* (emphasis added). Otherwise, "the same global reach would presumably be available in every other State" in which Blue Can's advertising and sales are sizable. *Id.* Thus as in *Daimler*, Utah's exercise of general jurisdiction here would be "exorbitant" because it "would scarcely permit out-of-state defendants to structure their primary conduct with some minimal assurance as to where that conduct will and will not render them liable to suit." *Id.*

In sum, Plaintiffs have not met their burden of establishing that this is the "exceptional case" where the nonresident Defendant should be subject to general jurisdiction in the state of

Utah.  Blue Can's operations and activities in the state of Utah fall short of the "continuous," "systematic," and highly "substantial" level necessary to be fairly regarded at home in this forum.

### II. Specific Jurisdiction

The Court's specific jurisdiction inquiry is two-fold.  First, the Court must determine whether the defendant has such "minimum contacts" with the forum state that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.  Second, if the defendant's activities create sufficient minimum contacts, then the Court must consider "whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice."  *See Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987).

"[T]he Supreme Court has instructed that the 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 472.)  "In all events, the shared aim of 'purposeful direction' doctrine has been . . . to ensure that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state." *Id.*  In the context of Internet activities, a defendant must have directed actionable "electronic activity into the state . . . with the manifested intent of engaging in business or other interactions within the State . . . ." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011).  Accordingly, "[m]ere placement of [national advertisements] does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser." *See Federal Rural Elec. Ins. Corp. v. Kootenai Elec.*

*Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (internal quotations omitted). Purposeful direction further requires "an intentional action [by the defendant] . . . expressly aimed at the forum state . . . with knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072. The forum state should thus be the "focal point both of the story and of the harm suffered." *See Walden v. Fiore*, 134 S.Ct. 1115, 1123 (2014).

Purposeful direction by a defendant is insufficient to assert specific jurisdiction unless the plaintiff's alleged injury also "arises out of" those forum-related activities. The Tenth Circuit has identified two possible tests to satisfy this causation requirement: 1) the "but for" test or 2) the "proximate cause" test. *Dudnikov*, 514 F.3d at 1078. Both tests require a "true causal element between a defendant's forum contacts and the litigation." *Younique, LLC v. Youssef,* No. 2:15-cv-00783-JNP-DBP, 2016 WL 6998659, at *4 (D. Utah Nov. 30, 2016) (unpublished); *see also Shrader*, 633 F.3d at 1246 n.8 (showing the Tenth Circuit's rejection of "a loose 'substantial connection' test and insisting on . . . a true causal element" between a defendant's forum activities and the alleged injury). Accordingly, "the requirement that the claim arises out of or results from the forum-related activities, is . . . not satisfied when the plaintiff would have suffered the same injury even if none of the [defendant's forum] contacts had taken place." *Kuenzle*, 102 F.3d at 456–57.

**A. Purposeful Direction**

While Plaintiffs have plausibly argued that Blue Can purposefully directed some intentional actions toward the state of Utah (primarily by entering into contracts with the University of Utah and IHC, and targeting the Utah market on its website by listing three Utah locations for purchasing Blue Can products), they have failed to argue *how* Defendant acted "with knowledge that the brunt of the injury" from its alleged false advertisements would be felt

specifically in the state of Utah. Put another way, Plaintiffs have not shown a specific instance or transaction where Blue Can purposefully engaged in false advertising that was specifically directed at, or with knowledge that the brunt of its injurious effects would be experienced in, the forum state. Instead, they have simply contended that Defendant generally put false advertisements into the stream of commerce (primarily online), and then asked the Court to link that wrongful act to all of its subsequent ordinary business activities in the state of Utah. *Contra. Asahi*, 480 U.S. at 105 (foreign defendant's "mere awareness...that the components it manufactured, sold, and delivered outside the United States would reach the forum state in the stream of commerce" was insufficient to establish purposeful direction or minimum contacts with California). The Court rejects this approach, which would stretch and distort the meaning of purposeful direction, potentially subjecting Blue Can to personal jurisdiction in any states with which it intentionally had business contacts of any kind, so long as they occurred subsequent to its alleged false advertising. These are exactly the kinds of "attenuated contacts" with forum states that jurisprudence protects defendants from being haled into those states' courts. Utah is not the "focal point" of this false advertising story.

Plaintiffs also allege that Be Ready was Blue Can's agent, that Be Ready clearly had minimum contacts with Utah (including advertising Blue Can's products at emergency fairs and in the *Deseret News*), and that Be Ready's actions were expressly aimed at the forum state. While true that "a principal may be subject to jurisdiction of the court because of the activities of its agent within the forum state," *Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990), the party asserting a principal-agent relationship "bears the burden of establishing its existence" (including the factual element of control) "by clear and satisfactory evidence." *Branding Iron Motel, Inc. v. Sandlian Equity, Inc.*, 798 F.2d 396, 401 (10th Cir. 1986). Plaintiffs have not met their burden of

12

alleging a requisite degree of control to establish an agency relationship between Blue Can and Be Ready. Instead, the facts presented suggest that the relationship between these parties is, as Defendant contends, a "standard distribution agreement" more analogous to an independent contractor relationship than an employer-employee relationship. (Dkt. No. 34 at 8.) And the bare fact that a party "contracted with a [forum] distributor is not enough to establish personal jurisdiction in the State." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco City*, 137 S. Ct. 1773, 1777 (2017).

Plaintiffs further argue that Blue Can "intentionally directed the May 2017 and February 2018 Letters to Puravai in Utah threatening to sue Puravai . . .", and that these contacts provide additional evidence that Blue Can "undertook intentional actions that were expressly aimed at Utah." (Dkt. No. 29 at 17.) However, when Defendant sent these demand letters to Plaintiffs in Utah, it was not purposefully availing itself of the benefits of doing business in Utah, nor was it purposefully directing any false or misleading advertisement toward Utah. As Defendant correctly observes, the demand letters "do not form the actual controversy upon which to base the claim for declaratory relief, but are merely evidence that a controversy between the parties exist." Dkt. No. 34 at 2; *see also Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999) ("It is well-established that phones calls and letters are not necessarily sufficient in themselves to establish minimum contacts").

Lastly, in support of Utah's exercise of jurisdiction over Defendant, Plaintiffs argue that their declaratory judgment claim "addresses [defamation] accusations directed by Blue Can to Puravai in Utah and implicates statements and information published by Puravai to its website and elsewhere from Puravai's Utah location." (Dkt. No. 29 at 19.), citing *Dudnikov* to support this contention. However, Blue Can's threatened suit against Puravai for defamation is not the

13

case before the Court, and *Dudnikov* does not require the Court to rely on the facts underlying Blue Can's separately threatened claim against Puravai simply because they are related to the instant claim. To hold otherwise would mean that any future plaintiff could simply defame an out-of-state defendant competitor from the plaintiff's home forum, and then hale the defendant into that court (without any meaningful contacts with the forum) for declaratory relief in response to the defendant's threat to sue. All based on the plaintiff's actions that took place in the forum state, and without regard to the defendant's "contacts, ties, or relations" to it. Instead, the Court opts to limit its consideration to Plaintiffs' false advertising claim brought before it, and the facts material to that claim.

### B. Causation

Additionally, Plaintiffs must allege that their injuries "arise out of defendant's forum-related activities." In this declaratory judgment claim, Plaintiffs solely allege that as Blue Can's competitor, Puravai "is harmed in Utah by lost sales and lost customers caused by the misleading advertisements" made on its "website and elsewhere," and as a result of "Blue Can's commercial contacts with Utah through its authorized dealers, the University of Utah and Intermountain Healthcare, and its appearances at emergency preparedness fairs in Utah . . . ." (Dkt. No. 29 at 17-18, 22.)

In addition to being sparse, Plaintiffs' allegations here are merely conclusory. To satisfy the causation requirement, they need to put forward actual evidence of injury and plausibly argue how Puravai's purported injury arose from Blue Can's Utah contacts, rather than simply asserting it. Thus under either the "but for" or "proximate cause" tests, Plaintiffs' "claim for declaratory relief here does not arise out of the commercial contacts" alleged by Plaintiffs. *See Younique* 2016 WL 6998659, at *4. Because Plaintiffs have not shown how this litigation relates

14

to Blue Can's contacts with the state of Utah, much less that there is a "true causal element" between its contacts and the alleged injuries (which also appear questionable), Plaintiffs' allegations have not satisfied either the "but for" or "proximate cause" requirements.

## **CONCLUSION**

For the forgoing reasons, the Court concludes that Plaintiffs have failed to show sufficient minimum contacts to support specific jurisdiction over Defendant. They have also not met their burden of establishing that Utah has general jurisdiction over Defendant. As a result, the Court need not consider whether exercising jurisdiction over Defendant would offend traditional notions of fair play and substantial justice, or whether venue is proper here. It is therefore ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.

DATED this 17th day of October, 2018.

BY THE COURT:

_Dee Benson_
Dee Benson
United States District Judge